## T. H. DAVIES & CO. vs. WILDER STEAMSHIP CO.

### EXCEPTIONS.

HEARING, OCTOBER 21, 1892. DECISION, NOVEMBER 8, 1892.

BICKERTON AND DOLE, JJ. Judd, C.J., being disqualified through interest.

A written contract will be read by the Court, and the parties will be bound by its legal effect. The construction of the Bill of Lading should not have been left to the Jury.

### OPINION OF DOLE, J.

The plaintiffs claimed of the defendant corporation $1504.41 for loss of goods shipped by them on the defendant's steamship *Likelike* on the 13th and 14th days of July, 1891, to be delivered at Paia and Wailuku, which are inland places on the Island of Maui, connected by rail with the sea-port of Kahului. The *Likelike* arrived at Kahului July 15th, somewhat later than usual, and the goods in question, with other freight, were landed but were not forwarded that day to their destinations by rail according to the usual custom. Early the same evening a fire broke out in the warehouse where the goods were temporarily stored, and they were all consumed. The jury found for the plaintiffs, and the defendant excepted to the verdict as against the law and the evidence, and moved for a new trial; and also excepted to a part of the charge of the court wherein the jury was instructed as follows:

"It is for the jury to say whether the conditions in the receipt are applicable only to marine losses occuring while the goods are on the defendant's route, and are not inconsistent with the defendant's undertaking to transport them beyond its route over the line of the Kahului railroad, acting as its agent.

" If an agreement was made between the plaintiff and the defendant, releasing the defendant by accident or fire, a loss from such cause would not be a defense to this action, unless defendant shows that the goods were lost in consequence of no lack of due precautions to guard against fire, and to rescue the goods in case of fire."

The defendant also excepted to the refusal of the court to charge as follows :

" That the exemption from liability for loss by fire extends to the whole distance which the goods were to be carried.

" That the burden of proof to show that the loss resulted from the negligence of the carrier is upon plaintiff, fire being one of the exceptions of the bill of lading, provided the jury find the bill of lading covers the whole distance of transportation."

The motion for a new trial was overruled by the presiding justice, and exceptions taken to this court.

In regard to the exception that the verdict was against the law and evidence, it is clear that there was sufficient evidence to go to the jury—evidence as to absence of precautions for the prevention of fire, absence of provision for promptly discovering a fire when started, or for saving goods during a fire ; and evidence of the inflammable character of the building heightened by the presence of combustibles and explosives miscellaneously stored, all going to the question of negligence. This being the case, the court should not disturb the verdict on this ground.

The instructions to the jury excepted to by the defendant were, in brief, that the construction of the bill of lading was within their province, and that the burden of proof was on the defendant to show that the loss did not occur through its negligence.

As to the latter point, I am of the opinion that the instruction was correct. It is true that there are authorities the other way, but I believe that to hold a common carrier liable for the loss or damage of goods which he has received in good order, unless he can account for the loss or damage through one of the excepted causes and without negligence on his part, is according to sound legal principles. Such has been the view of the jus-

tices of this court so far as the question has arisen in litigation. Chief Justice Lee, in *La Motte vs. Angel*, 1 Hawn., *140, used the following language : "We are asked to presume that the damage was not the result of negligence on the part of the carrier, but in the absence of all evidence on the subject we think the legal and just presumption is the other way. If merchandise, in good order, is entrusted to a carrier, and it arrives at its destination in a damaged state, the carrier is responsible, unless he can show that the damage is not the result of his negligence. The onus is upon the carrier to show how the goods were injured, and not upon the merchant. To impose upon the merchant the obligation to prove negligence on the part of the carrier would be a great hardship, for he does not usually accompany the ship, and is not acquainted with the incidents of the voyage, whereas, on the contrary, it is an easy matter for the master, when he has used care and diligence in transporting the property, to show that care and the absence of any negligence on his part." This reasoning is recognized by Chief Justice Allen, in *May vs. Schooner Sovereign*, 6 Hawn., 44. He says after referring to the above case : "It is clear to my mind that it should be incumbent on the respondent to prove that the loss was occasioned by the perils of the seas, after having done his full duty in furnishing a seaworthy vessel, and sailing her in a seamanlike manner with her cargo well stored and dunnaged. After he has thus made a prima facie case, the libellant may, of course, introduce rebutting evidence that the loss might have been avoided by skill and diligence at the time." The case of *Webb, in re,* (6 Scott N. R., 956 ; Angell on Carriers, sec. 213, n., 3) which was brought for damage to freight while in transportation, has the following : "No act or omission of an act has been proved to show that the defendants were negligent, or that they did anything to injure the property. If they are responsible, it arises from an inference of law that if property is given to common carriers for transportation, and when given to them is in a sound state, and that it is in an unsound state when delivered, it is the duty of the common carriers to show how it was injured. For if the property was in

a sound state when delivered to the carrier and found to be injured when delivered to the owner, it would be imposing on him a great hardship to be obliged to show some act of negligence on the part of the carrier. For in order to do so he must go on board of the vessel to come at the facts of the case and possibly would not succeed in eliciting them. * * * The law presumes that if the goods were safe when put on board, the injury to them arose from negligence on the part of the defendants, unless they show the contrary."

This reasoning applies also to the circumstance of the loss of goods while in the possession of the carrier. The court left the construction of the bill of lading to the jury, and the defendant excepted thereto as has been already stated.

The construction of contracts is for the Court, except in certain cases where they contain technical words, or words of local usage, the meaning of which must be ascertained by evidence ; or when doubt is introduced by the existence of collateral and extrinsic facts not appearing upon the instrument, making it necessary to seek the intention of the parties by a recurrence to the state of facts as they existed when the contract was entered into. The contract, in this case, is not within any of these exceptions, and should have been construed by the Court, even though its meaning was disputed by the parties, for such meaning was to be ascertained by the inspection of the contract itself, although its application may have depended upon parol evidence whether or not the defendant was a common carrier over the land part of the route. "When a contract is reduced to writing it may, and probably does, sometimes happen, that one or both of the contracting parties misapprehend the legal effect of the writing. Yet, if it be not altogether unintelligible, the Court will read the contract for the parties, and they will be bound by its legal effect. The obscurity of such a writing, or the difficulty of putting a satisfactory construction upon it, is no reason for setting it aside, or for leaving both the fact of its execution and its legal construction to the jury." *Rice vs. Dwight Man. Co.*, 2 Cush., 86.

This point is important, as the jury may have, wrongly as it

seems to me, restricted the reservations of liability contained in the contract to the sea route only; in which case, if they found the defendant to be a common carrier, they would naturally, under the unquestioned instructions of the Court, have found it liable for the loss without considering the question of negligence at all; *Asegut vs. King,* 2 Hawn., 733; which would have been unjust to the defendant and deprived it of the benefit of its reservations in the bill of lading. The Court should have charged the jury that the exception in the contract applied to the whole route, and then the sole issue would have been the question of the defendant's negligence. The exception upon this point should be sustained and a new trial granted.

The following is a form of the contract or bill of lading:

"Honolulu, July 13, 1891. Received from T. H. Davies & Co., in apparent good order, on board the Likelike, the following packages, contents unknown, to be delivered in like good order at Paia (or Wailuku), dangers from fire, explosion, collision, accident and dangers of the sea expceted.

"It is expressly understood and agreed that the —————— Company is not accountable for unavoidable delay or detention; that said goods may be landed at any time during the voyage out or return, or so soon thereafter as practicable; and that said goods shall be considered as delivered to the consignee when placed on the wharf or landing above mentioned, and the risk of said company thereby terminated.

" Live stock, all perishable goods, glass, crockery, or articles contained in glass or crockery, castings or any article of a fragile nature, taken only at risk of shipper, owner or consignee, and will not be responsible for moneys or jewels unless in charge of the freight clerk."

(Here follows a schedule of the articles shipped.)

---

Parol evidence having been introduced, without objection, to ascertain the meaning of the contract, the intention of the parties and the state of facts, the facts constituting the contract were properly left to the Jury.

34

### OPINION OF BICKERTON, J.

In regard to the first and last exceptions, viz., that the verdict was against the law and the evidence, and that the burden of proof was on the defendant to show that the loss did not occur through its negligence, I fully agree with the reasoning and conclusion set out in the foregoing opinion, and therefore these exceptions must be overruled.

In regard to the Court leaving the construction of the bill of lading to a jury and the exception taken thereto, I adhere to my former ruling, and am of the opinion that this exception should also be overruled. The law on this question, as set forth in the opinion of Mr. Justice Dole, I understand to be correct in the main, but I do not agree with the learned Justice that "the contract in this case is not within any of the exceptions, and should have been construed by the Court." In this case parol evidence was introduced to ascertain the meaning of the contract and the intention of the parties and state of facts as they existed when the contract was entered into. This was not objected to. This being the case, the Court would have to pass on the facts in construing the contract, which facts should be left to the jury.

The two Justices who have heard this case not being able to agree that a new trial should be ordered, it follows that the verdict must stand.

*A. S. Hartwell*, for plaintiffs.

*F. M. Hatch*, for defendant.